Good afternoon and welcome to the Ninth Circuit. We wanted to have this hearing here at our Pasadena Courthouse because the judges are scattered. That means we are electronically connected with Judge Bea, who is in San Francisco, and Judge Ferris, who is in Seattle, but you will be able to see them and they can see you. I understand that there is an agreement as to the sequence of arguments. I should confirm, is that agreement on each side? So let me start by asking the appellants to confirm who is going to be speaking first. And have you agreed upon a time allocation? And I understand, I should let you go ahead and tell me, what is the sequence going to be amongst the appellees? Okay. You may proceed. We can set the clock that way if that would be useful. Well, you have 20 minutes total. If you want to divide it 10-10, then we can do that and we can do that for the appellants as well. So why don't we go ahead and put 10 minutes on the clock. Good afternoon, Your Honors. May it please the Court, Suzanne Snowden for Appellant, Intervenors Mina Lee and Francis Moreno. We have kids here today who are from the Los Angeles Unified School District who will be and their children are being forced off special education centers onto inappropriate general education campuses that will start next week. We believe that the District Court abused its discretion by summarily denying our motion to certify the subclass. The District Court is a fiduciary to all members of the Chanda Smith class action, not just to the members who do not want to litigate renegotiated outcome 7. The judge's focus on those families who don't want to litigate renegotiated outcome 7 and its negative effects has ignored and not recognized the members of the subclass that we seek to represent that this Court already found did not have adequate representation based on renegotiated outcome 7. Pardon me, Ms. Snowden, you're arguing an appeal from a denial of class certification. Correct. Would you kindly address those issues? Yes, we believe that this Court has jurisdiction under 1291 because our motion to intervene on behalf of a class is appealable under 1291. You've won that motion. Pardon me, Ms. Snowden. Yes. You were successful in winning the motion to intervene. But the motion to deny. That is not before us. There was no class certification attendant to the motion to intervene. Correct. Was there? No, there wasn't. Therefore, the motion to intervene and the order granting it did not establish a class. Correct? That is correct. But it has, in effect, denied our ability to intervene on behalf of the subclass. Where do we find that? Where do we find that in the record? What the record appears to show is that the District Court asked you to tell him what is the class that you represent. Yes. And instead of answering that question, you elected to appeal. Your Honors, they, the judge, dismissed the case. Where in the record can we find, where can we find, where in the record can we find your response to the judge's request that you tell him what class you represent, that you define the class? Where can we find that you did? Our reply to the District Court. We defined the subclass. We created typicality, commonality. Where in the record, cite us in the record where we find that. It's our reply, and I don't have the docket. I can have Mr. Amster provide that for our reply. I think, I think what you, the classes you sought to certify were spelled out in ER 262, 268, and 281 to 282. There were two classes. The first class had four categories, and the second, there's three categories, and the second class had everybody else. So tell us why the judge was wrong. Why was the District Court judge wrong in saying that the class that you sought to certify in the District Court was overbroad because it included practically everybody in the Who argued that it was overbroad? And after reviewing the initial motion, which Mr. Amster can address, it was his, it was his motion and his definition that was in the initial motion, but after class counsel indicated that it was overbroad, we submitted a reply which was consistent with this court's prior ruling as well as the Chanda Smith class counsel's definition. But the reply, the class you submitted in the reply was only done in the reply and not in the motion, and the District Court was not required to consider that because the other party didn't have a chance to respond to it. So therefore, we, what did the District Court do wrong in going by your initial certification request rather than the certification request which was only in the reply? Well, Your Honors, I would submit that the District Court actually did review and address the reply. Moreover, District filed an opposition, which was also considered and deemed moot because the District Court denied the certification of the subclass and in effect denied what the District Court could have done was allowed us to file a motion to submit, to refile and cure any deficiencies. Pardon me, Ms. Snowden, you can do that now if we affirm the District Court, since the District Court denied the certification of the subclass. So you can get back there and do what you're talking about now, can you not? We can attempt to, Your Honor, but we're concerned and we also believe we have jurisdiction under Rule 23-F because we believe. Oh, you haven't asked this court to exercise discretion. We filed a motion in this, I forgot the case number, but we did file an appeal under 23-F and the cases were consolidated. Okay. And the judges ruled that they would rule upon our request for permissive appeal after this case has been heard. There's a couple of problems with 23-F, Ms. Snowden. 23-F requires two elements. One, it requires that the ruling on a class certification be a death metal. Right. And secondly, it requires that the ruling be manifestly erroneous. I don't see that those two elements are in any way made out here. Except that we have been unable to, we have been denied at every stage of this case by the District Court any attempts to act on behalf of the subclass. Well, why do you have to, I mean, you obtained intervener status. You've got the ability to raise objections within the litigation. What difference does the subclass part make? Well, when we requested TRO-OSC re-injunction to prevent LAUSD from moving children from Salvin Special Education Center on to Pio Pico Middle School, the Los Angeles Unified School District objected, saying that we didn't have standing to raise issues on behalf of the subclass. And the District Court agreed and denied, didn't set anything for hearing. So are none of the named interveners in a position to state an objection? I mean, there are interveners. We specifically ordered the District Court to permit interveners. Do none of them have the ability to state that objection? We were told we don't have standing because Mina Lee's son is already at a special education center and Francis Moreno's daughter passed away. So neither of those families had children at Salvin Special Education Center and as a result we were denied because we didn't have standing. So we're, it is a death knell situation. These families have yet to be represented. This court found an inadequate counsel and a class that isn't being represented and what we're arguing is that the District Court had a fiduciary duty to protect the members of the subclass. Now if our representatives are inadequate, there should be a hearing on it. But instead we're spinning our wheels trying to effect change for, as a result of that. Well, isn't the reason clear why you're spinning your wheels? The court said to you, the court, at least as I read the record, and you can correct me if I'm wrong, the court didn't say to you, you can't certify the class. The court said to you, tell me what the class is that you want me to certify. And repeatedly asked that question and as I read the record, you didn't respond. Your Honor, the District Court decision on class certification itself didn't consider the record. The District Court found that because of Mina Lee and Mina Lee's settlement of the case, that made her an inadequate class counsel. Which we believe is manifestly erroneous because she, as a perfect person, she had her child at a special education center for the blind, her son's blind, deaf, cognitively impaired, and her child was forced onto Fairfax High School and she filed to get her child back into a special education center. We believe that the District Court failed to look at the record and failed its fiduciary duty to these unrepresented class members. Okay, we've exhausted your time. We'll still give you a brief time for rebuttal, but I don't want to take the time away from your colleague. Thank you, Your Honors. Good afternoon. May it please the Court. I am Seymour Amster, representing the interviewers, April Munoz. So I want to jump into, specifically, situations. Specifically, what is important is the District Court considered both definitions that we gave to them on a subclass. It doesn't make a difference if the other side had the right to argue or not. The Court denied it. So what more were they going to argue? Something more for the Court to deny? The two definitions, number one, that's in the moving papers, we laid it out as we did in the motion to intervene, that was done closely to resemble as the original class was defined. In between, because of the opposition, we decided to also give another option, and that option was, that's in the record, students with disabilities and their parents who want a special education center as an option. The Court denied that, specifically. So what more was there to deny? Counsel, that's not the language that you used in your proposed class certification. Category one, individuals who were designated by LAUSD as students with disabilities, who were placed and remain at a LAUSD general education campus. That is not what you just told us one minute ago. You're reading from the original motion to certify the subclass in our response. And that is the only one that was validly considered by the District Court because the other classification came in a reply brief and our cases are quite clear that you cannot get a class certified that is raised only in the reply brief. With all due respect, the District Court should have maintained that position and never considered it. The District Court denied that. And the minute the District Court denied it, it became ripe. And then our problem is this. The District Court never said this was with prejudice or without prejudice. It did, too. It ruled without prejudice. It denied your motion to certify without prejudice. It doesn't state that. If this Court wants to specifically state that that's your interpretation of the decision, at least we move forward on that. Because it never said without prejudice and that was our problem. So therefore, we're left in a dark room trying to throw darts at a dartboard that we can't see. The District Court made it three things very specifically. One, they denied our subclass definition of the motion as you stated. Two, they denied the definition given by the Ninth Circuit, the only difference being that we broadened it to new families that have come in that want a special education center, an option that were not there in 2011. The Court denied it. Three, the Court said we're not granting you subclass designation unless plaintiff's counsel agrees, which is preposterous, but that's what the District Court said. That's a death knell. We have no place to go except to certify and bring this to an end where the cases are basically saying subclass should be done. And there's a fourth thing. And the fiduciary duty is extremely important. The Court had the sua sponte duty to at least give us direction, do something. The whole point of the matter, the motion to intervene that you talk about originally talked about class representation. How can we keep moving forward on a matter where we have absolutely no class representation that has a stake in the proceeding? All you have to do, counsel, is fashion a class similar to that which we recognize as a group that should intervene and submit that to the District Court. But you're not doing that. What you're doing is you're trying to enlarge your class to take over the whole lawsuit. That you cannot do. That is not correct, Your Honor, with all due respect. We defined it in the reply. We're going to have a disagreement on that. Just to include the families that want a special education center as an option. That's not enlarging it to everyone, because there are others. That's in the reply. I think we've been over this ground. It was in your reply papers and does not have to be considered by the Court. The District Court did make reference to this revised definition in the reply brief. And I confess I had trouble understanding the District Court's order, who mostly talked about the original definition, but from time to time appeared to return to what I'll call the revised reply definition. The Court identified some objections that it had or places where it thought the revised definition fell short, notably with regard to numerosity, common issues, and adequacy of representation, as to the last apparently going to the same problems which have been described in terms of standing. Which, to be honest, we weren't conscious of the first time around for this case. We were viewing the intervenors as people who at that point in time still had the standing to pursue the grievances. It's assumed for a moment we give consideration to the revised class definition. How does that definition satisfy the deficiencies identified by the District Court? If I may. OK. Numerosity was conceded by the District Court. And we put in our motion... Numerosity was conceded by the District Court as to your original, not as to the revised. OK. Well, I mean, it's a big difference. OK. I hear you. I respond to you. Our motion, we at least identify 40 families or students that have been taken off of specialist centers, if not more. So the same numerosity definition applies to both. We're specific in the numbers, and I don't think that's ever really been contested. Commonality. It was commonality and representation that he really identified with reference to the reply definition. So I guess I should direct you to those. I'm going to give you two commonality. I'm going to give you the big and the small. The biggest one is this. The greatest threat to the health and safety and education of the proposed subclass members is plaintiff's counsel, and this threat will not be eliminated until they become a subclass with their own independent appointed counsel who are willing to advocate on their behalf. Our briefs go into extreme detail where, before revised outcome 7, these families were happy where they were. Then they were forced off. We've got outcome 13 now being considered, which is extremely important. And these families are at a threat of having services improperly taken away from them. The other commonality is this. They want special education centers as an option. It's as simple as that. And special education centers are part of the continuum. So commonality, all of these terms and all reality, has been so fully briefed, there absolutely should be no dispute upon it, misnoticed on an excellent job on it. There's overwhelming evidence on it. The problem is this, and I'll tell you right now. You send us back to the district court, I'll tell you we will be back up here again. The district court does not want to give us subclass status. That's why they threw in and took the bait and did deny, as you stated, because they want to make sure we're not getting it. The problem is this. This has been five years. And originally, what did we really want? We just wanted these named interveners to be class representatives. That's what we said in the motion to intervene. That's what we did with the ex parte. That's what we did with the petition. If that had been granted, we wouldn't be here right now. And how absurd is it when you have a class action where the only class representatives have aged out, have graduated, are not part of it, and they have a say, but actual parents and their children don't have a say? And they don't even have due process rights? Because it's already been ruled on by this court, they're not being represented. We have shown in our history that, one, outcome 7A and 7B before modified was stated in the record by the independent monitor, we are not going to be able to make this outcome because you've got the parents not wanting it to happen. They don't want their children transferred onto general campuses. So what happened? We don't just deem it accepted. No. Plaintiff's counsel then engineers where they put in revised outcome 7 where the parents no longer have a say in their IEP because revised outcome 7 overrules their independent decisions, and there's overwhelming evidence of how that caused the transfer. But worse than that, outcome 4, small line in the stipulation, outcome 4 was the only outcome that measured the meaningful education for these individuals. It was stated that outcome 4 was not being met, that there would be a timeline starting September 2012. One month before, August 2012, stipulation entered into that it has been met. Why does plaintiff's counsel deem an outcome met that has not been met? That is the only measurement of these moderate to severe disabled children? I'll tell you why. Because they knew when revised outcome 7 went into effect, their meaningful education would become de minimis. And that is what's happened. So what happens? We raise all these complaints. Your time has expired. If you want to reserve any time later. I don't have 20? Okay. You're in deficit. You've actually overspent 20 seconds. But deficit is sort of the Federal Government's way of doing things sometimes. I need to print some more time if possible, Your Honor. May it please the Court, Barrett Green for the school district. I wanted to start by saying the school district took very seriously once this panel, even though we opposed it originally, granted the interveners a seat at the table. This panel said that there's a problem with that or there might be a problem with outcome 7. And we've been waiting now two years for them to go to court and say to the district court, here's the precise problem with outcome 7. We want it stricken. We want it modified. We want something. They don't need a class. They never need a class to do that. We've talked to them about this. Do they have a standing issue? You know what? They might, but we wouldn't, most likely wouldn't even raise it because someone else would have standing. So this Court has already said that the issue is important, that the idea of potentially an arbitrary number of students being transferred off might be something somebody should advocate for. So I can't promise you, because I have to confer with my client, but we would probably say if they, without a class, challenged outcome 7 and said it was illegal and they wanted it banned, we would either oppose it or we wouldn't oppose it. We'd either change it or we wouldn't change it. But unfortunately, it's really been a waste of time. I don't even know why they've done it. I do not know why they're trying so hard to create a class. Now, I want to talk briefly about that class issue, because even this revised definition that Mr. Amster is talking about, all children who would like special ed centers as a placement, that's not a class. That's everybody. It's part of the continuum in the consent decree. You can't have that as a class definition. Well, it's presumably not everybody, because I assume there must be people that of students at the special education centers. But that doesn't mean it should be eliminated as an option. I mean, as we discussed at the last argument, Your Honor, L.A. Unified is one of the few districts that actually has special ed centers, so we're not actually required under the law, but the consent decree does provide for it. We still have special ed centers. It's still available. We do not blanketly deny it. So we want to assure the panel that we are not here trying to put the kibosh on the efforts of the interveners to advocate against outcome 7. We're waiting for them to come before the district court and say, here's the problem with outcome 7. This is what we want you to do. We might even work with them on it. It's very possible. Can you give us a succinct statement of what you see as a defect? On the appeal? Yes. Well, there's a number of defects. First of all, there's no appellate jurisdiction. I think that's ironclad under 23F and under the Microsoft case. For purposes of the appeal, there's no jurisdiction. There's no exception. And even these post-judgment cases, I don't think they would apply anyway, but they certainly were not class cases. Secondly, there's no need, even if we were under the petition, which I would not like to argue today, but if we had to argue the petition, I would say you don't meet any of the three elements. There's no death knell, because they could argue the outcome 7 without. There's no death knell. They could argue that as legal. It would be collateral estoppel against us if they got it granted. There's no manifest error. That's overwhelmingly thorough decision by the district court. And there's no unsettled and fundamental question of law. So really, we really shouldn't be here. But we want to assure the court. I want to talk about the TRO for a minute, because Ms. Norton made this point about, oh, well, we couldn't advocate on behalf of these children. I think if you look at the Mendamis record, that is completely to the contrary. They came to us at the last minute. They said there's these 16 children who don't want to leave the special ed centers and you're really pushing them off. And we said, look, you really don't have standing. You're not their lawyers. But I'll tell you what. We discussed this internally and the district said we'll offer all of them the opportunity to stay in special ed centers. Only five took them up. And that proves to you that this shouldn't be a subclass, because how are you going to tell which of these 16 really wants to be in this subclass and which doesn't want to be in this subclass? So there isn't a harm that's going on to a group that hasn't been given a standing. I wanted to briefly address the question that came up. Now, we're not inviting that there should be another motion for Class Cert, but we know that under 23c1c the issue of Class Cert is always open. Justice Ginsburg mentioned that in the Microsoft case. So you don't have to say whether it's with prejudice or with not. It's always open until the case is finished. And then finally, the last point I want to make, and I'm going to try to end early here and turn it over to my colleague unless there's questions, is that if we never even had a chance to respond to this supposed reply class that, Justice Beyer, you were pointing out you should not have been considered at all. But we asked the district court, we said if that's going to be a basis for a ruling against us, we should at least be able to address it. And district court said you don't have to. It's moot. So the idea that we had, I think Ms. Noden suggested, that we had an opportunity to respond to the reply class. That's not even accurate. But in summary. I think the observation was you didn't have to because the judge did the work for you. Potentially. But if they're going to criticize the judge, we may have other arguments. Not that the judge isn't a great judge, but, you know, we may have some bolstering arguments on that point. So in summary, we don't think there's jurisdiction. We don't think there's a basis for granting a petition anyway, even though we're not arguing that today. We think the interveners can move forward and challenge outcome seven whichever way they would like. And we hope the district court will either dismiss for lack of jurisdiction or affirm. Pardon me, counsel. You said that you think that the interveners can challenge outcome seven. Do you mean to say on an individual basis, not without a class? Correct. Okay. Thank you. Good afternoon, Your Honors. Melinda Bird for the class plaintiffs this afternoon. I'd like to address three points. First, the courts already asked questions about the difference between the class definition raised in the motion for certification and the definition advanced in the reply to the district court. I'd like to note that the changes in the class definition have continued since then, and that we're continuing to see variations in the proposed definition of the class, even on appeal to this court. And even in the reply briefs, we saw new variations posed. And one example I'd want to call out, all of the proposed class definitions appear to turn on the opinion of families about whether a special ed center should be available. But some of the proposed definitions frame that as, I want a special ed center for my child, versus I want a special ed center to exist in the world without regard to my own child. So it's a kind of theoretical opinion about special ed centers. Well, I don't know that the class definition speaks to that. I mean, granted, it's been a little bit of a moving target, but this is a dynamic subject. And as now pushed forward, the notion is that the interveners want to represent a subclass of people who, I understood them to say, want to have that option available not just theoretically, but for their child. And part of the problem here is that people are not of one mind. You have people in the same category. Indeed, you are representing a class where it's entirely clear that there are people covered by the class definition who have a different desire as to what the outcome of this process should be. So how does the Court deal with a somewhat unruly class or subclass where not everybody wants the same thing? Your Honor, I think some of it is going to be the precision with which the subclass is defined. And our position has been all along that we don't oppose certification of a subclass. We heard the Court two years ago, and we have worked hard to make sure that the interests and concerns that were raised by the interveners have been addressed since then. The Office of the Independent Monitor, for example, has been investigating the issues that were the substantive issues that were raised by the interveners. And some of those were their children were placed on special ed campuses that weren't wheelchair accessible, or didn't have changing facilities, or they went to IEP meetings where they were kind of railroaded into a certain outcome. All of those issues have been addressed by the Independent Monitor, who is here in the courtroom today. We had an example taken up before, for example, with regard to the tension between the outcome that would reduce the number of children placed in special education centers versus what we are told or heard a few minutes ago, individual education plans, which, in effect, are steamrolled by revised Outcome 7. And I will say, from the perspective I came into this a couple of years ago, certainly we've had lots of IDEA cases. L.A. was something I was unfamiliar with, and I was puzzled by an outcome that set as a target a reduction in number seemingly untethered to the IEPs for individual students. So that argument was something that resonated with me. Now we hear from the interveners that the problem still exists, that it's not being addressed, and the court won't hear them because they don't have standing. From your perspective, what's being done to address that identified problem? Your Honor, the issue is whether a particular child's needs are being met by the offer of placement. That's FAPE, Free and Appropriate Public Education. And I think the crux issue is, are there children who need a special ed center or a separate school that offers a comparable program, which might be a non-public school? Are children who have that need being offered those placements? And it's a mighty system. There are mistakes made. I was pleased to see, for example, that all of the interveners were able to resolve their children's situations. When they came and they did that via settlement or they did that by standing up to the IEP team and saying, I want my child to stay on the special ed center. And that became apparent when we looked at the declarations from the interveners that were filed in 2017. The system worked, is what I'm saying. It did work with regard to the individual interveners. And the concern that lurks out there is, is grease applied only where the wheel squeaks? Because, as we talked about a couple years ago, this is a big system, and a lot of people in the system are families ill-equipped to deal with the bureaucracy. Absolutely, Your Honor. And there's a couple ways that this is happening. One is I want to assure the Court that special ed centers continue to be available on the continuum. And in preparing for this argument, I asked the district to give us the number of special ed centers that remain open, the grades of the children who are entering those, the population, how many children are in non-public schools. It looks like there's about 880 kids in special ed centers. There are eight special ed centers that remain open. Many of them do admit kindergartners. There are about 2,900 children in non-public schools, which have programs comparable to a special ed center. That's what most other districts offer. That system seems to be stable. How do those numbers compare with two years ago, five years ago in the past? I mean, has there been a decline in the number? Absolutely there has been, and it has been part of a process of achieving better balance. When we started litigating the Chanda Smith case, the balance was pretty extreme in one direction. About 28% of the kids with disabilities were in general ed. What our goal has been is to balance it at about 50-50. And the court reflected that in its 2016 decision, where you went over the history of the extreme imbalance and the goal being about 50-50. It's 50-50 right now. There are no plans to change that. There is a question, I think, about are there mistakes made, and absolutely. We represent, we as class council, we represent new children who are presently students. We represent some children who want to get into a special ed center, and we work for that. We represent children who are assigned a special ed center or a separate school and want to get out. As I thought about it, we could have continued to intervene in new children who represent both ends of the continuum. It seemed like a waste of our time and the court's time, but that's always a possibility in an ongoing case. Ms. Bruce, could I ask, you said a moment ago, unless my notes are wrong, that you don't oppose a certification of a subclass. Is that correct? Yes, we do not oppose. Have you ever proposed the definition of the subclass that you do not oppose? You know, we've had confidential settlement discussions with interveners about acceptable class definitions, and we've never been able to reach an agreement. And part of it, I will say, is that there are two groups of interveners, and they don't agree among themselves. And so I think with one of the groups of interveners, we could be very close to a stipulated class definition. With the other groups of interveners, we're not. And this is one of the issues, I think, that needs to be presented afresh to Judge Liu in the district court. Do you think it would help you at all if we referred this matter to mediation? I do, Your Honor, and that is one of the things that we proposed in advance of the argument, but were unable to reach agreement on that. Okay. Thank you. On going to mediation versus proceeding to argument. We would support mediation. I just want to say, too, I think there are also important standing issues. The courts flagged this before. Both the standing of the interveners who are before the court now, the impact of their settlements. There are two, apparently, children who didn't have a settlement. I'm not totally clear whether they both are— not all of the original interveners have submitted declarations saying they want to be class representatives. I think one option would be for the Interveners' Council to intervene in additional children who do have a personal stake. And I am concerned that the current interveners may lack the personal stake that is required to be a class representative in a viable class. Do we have that problem with the plaintiff class representatives as it is? One of the problems with the litigation, it's so long-lived that— and this isn't meant to be at all disparaging, but it has a life of its own that's sort of separated from the individual names that appear on the front page of the document. Your Honor, I mean, in other cases, when I have lost a class representative or they've lost standing, I've intervened in new parties. Because this is a post-judgment consent decree, we didn't do that. But we could. And I do want to represent that we have our finger on the pulse of what are the concerns. And the thread that binds all this together is, are the children getting a free and appropriate education? And whether it's a special ed center or whether it's on an integrated campus, that's the common claim that binds my class together. I just want to relate one thing, which is we did reach out to interveners in anticipation of this, and they mentioned the problem, I think, that Ms. Snowden referred to when she first stood up, and that is children at a special ed center who are matriculating and don't— and their parents don't feel that there's an appropriate place for them to go. To me, that is exactly the kind of issue that we can raise with the independent monitor. Part of the consent decree includes a client resolution unit that is family-friendly, does not require them to have lawyers or go through due process. The monitor has been carefully reviewing and ensuring that that CRU unit is properly responsive to families. So that's always an option. But I guess I was struck by the fact that these children had been at a segregated school, the children who are matriculating. They were integrated so that non-disabled children were on the campus with them, and they had a really positive experience. So I think it does show that the issue of integration versus segregation is not that black and white, that all children, including children with severe and moderate disabilities, can benefit from contact with their non-disabled peers. But it's an individual question. Each child is different. A few cases illustrate better that we're not all of one mind about some of these issues, but I appreciate your comments, and I guess appreciate the school districts tossing a few extra minutes in your direction. So with that, we will hear from appellants. We'll give each of you the three minutes. This is important, but please try to combine yourself to the three minutes. It's been agreed that I would go first. A couple of things I want to state. The independent monitor will not talk to us. We're not at the table. Secondly, I do not agree with a lot that Learning Council mentioned. Special ed centers south of downtown Los Angeles, it is a catastrophe. They don't exist. Those that do, some accept high school students, some accept middle school students, some accept grade school students. It does not exist. Two, this is not a question about segregation or not. Co-located campuses are fantastic. Our problem with the co-located campuses war, they weren't being brought together to adhere an IEP goal. That's all. So now, let's talk about plaintiff's counsel taking care of the issues. Plaintiff's counsel have never filed a single motion in this proceeding from the very day they were appointed. Yeah, the independent monitor is involved in negotiations. That's not his job. But he's forced to do it because plaintiff's counsel won't do their job. So we talked about the ADA violations, which are so important. Our proposed subclass members were on special ed centers that were ADA compliant. They were forced onto general education campuses that are not ADA compliant. Because we complained about it, the independent monitor found out about it. So he found out there are LAUSDs, I believe $1.3 billion in arrears on ADA compliance. He's been working on it. Nothing's happened. Bathrooms. So in the last IM report in 2017 to 2018, one in five schools lack an accessible main entrance. One of four sites have vertical access problem. Almost nine out of ten schools have pervasive problems or non-compliant conditions. These are not scheduled to be completed until 2015, when many of the proposed subclass members age out. There's not time here. What happens when a child ages out and they're 23 and they no longer have an education? They end up in the most segregated of institutions because the family members die off. This is a critical situation. No. Plaintiff's counsel is not advocating on behalf of the proposed subclass members. We are glad that LAUSD has conceded that any intervener can bring a challenge to revise outcome 7. This is on record, so we'll hold him to it. Two. Talk about MH. MH is one of the interveners. She's not in a special ed center. She wants to be in a special ed center. And don't forget, during the co-located activities, she went home and when her pants were pulled down, she said no. And that's in the declarations. Unmonitored, unsupervised, what parent would allow their children to go through these things? But when there aren't the resources being advocated, when plaintiff's counsel won't file a single motion on behalf of the proposed subclass, what do you have? And they turned on them. The families would not agree to special ed centers, so they took their rights away. What court would allow individuals to be represented by attorneys that turned on their very clients? You want to send us to mediation? Fine. Two. We are in agreement. You have exceeded the time that you were allotted. I just said two seconds. Well, no, I made a point of saying stick to the three minutes and you're now approaching four. Thank you. I just wanted to make three points. One, Ms. Bird stated that she received all the information on special education centers, how many kids were on the campuses, how many special education centers are open. I made that same Public Records Act request five months ago. I have had no information because I am not important enough to provide that information to. Second, Ms. Bird talks about non-public schools. Non-public schools, their enrollments went up as a result of the special education centers' closures. So I'm not sure why Ms. Bird will advocate for non-public schools and a 33% reduction in those segregated schools, but will advocate for a 33% reduction in special education centers. I just want to point, direct the court to the district court's order where he said, as a general matter, the court finds trouble in intervener's suggestion that the court should not divide the certified class that has been intact for more than 20 years into two subclasses when plaintiffs as original class members directly oppose the suggestion. And that's on our excerpt of records, page 45. The LAUSD, I'm glad that they're saying that they have been open to us and providing for our issues. The truth is that they opposed our TRO on the grounds that Mina Lee and Francis Moreno did not have children attending those special education centers. And the judge granted the denial on that, for that reason. Francis Moreno is an advocate for special education centers. Her daughter died in an inappropriate placement. I had actually filed for her to get her child back to a special education center. So she has, she advocates for special education centers. Her daughter had caravan disease, sorry, cannabis disease, where the brain needs to be stimulated. They took her off a special education center and placed her on an inappropriate gen ed center where her brain wasn't stimulated and she had to be hospitalized and she passed away. The Morenos believe that because this child was placed from an appropriate placement on a special education center to an inappropriate general ed placement that it hastened her death. She has gone to multiple board meetings to explain this and no one listens. No one listens to us. And that's all I have to say. Thank you. Thank you. We thank all counsel. The possibility of mediation with this court was raised. I will just ask you collectively if it is worth our withholding submission for a week or two so the group can collectively decide whether a referral to the mediation system would be useful. If anybody tells me now that's a waste of time, that's fine. It is not to us, Your Honor. Then the panel will confer and issue an appropriate order. The case is not submitted at this time. An order will be submitted shortly. That's the end of the day. We are adjourned.
judges: Farris, Clifton, Bea